IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| KAREN DENISE GENTRY | ) | |
| | ) | |
| v. | ) | No. 2:18-0083 |
| | ) | |
| ANDREW M. SAUL | ) | |
|     Commissioner of | ) | |
|     Social Security[1] | ) | |

**To:** **The Honorable Waverly D. Crenshaw, Chief District Judge**

### REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disabled widow's insurance benefits under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (*see* Docket Entry ("DE") 11), to which Defendant has filed a response. *See* DE 16. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. *See* DE 4, 17.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 11) be **DENIED**.

---

[1] Andrew M. Saul has been appointed Commissioner of the Social Security Administration. He is therefore automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## I. INTRODUCTION

Plaintiff filed an application for disabled widow's insurance benefits on August 13, 2015 in which she asserted that she was unable to work due to back pain, neck pain, right arm pain, left knee pain, and vision problems. *See* Transcript of the Administrative Record (DE 7) at 93, 116.[2] She alleged a disability onset date of January 16, 2014, but later amended this to August 17, 2015. AR 39-40, 111.

Plaintiff's applications were denied initially and upon reconsideration AR 93, 111. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Todd Spangler on August 21, 2017. AR 36. On March 9, 2018, the ALJ denied the claim. AR 13-15. On July 23, 2018, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and this Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

2. The prescribed period ends on September 30, 2021.

3. The claimant has not engaged in substantial gainful activity since August 17, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

4. The claimant has the following severe impairments: joint dysfunction status-post reconstructive surgery of a weight-bearing joint; disorder of the spine (20 CFR 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the claimant capable of lifting and carrying up to 20 pounds on an occasional basis and 10 pounds on a frequent basis. The claimant is capable of standing and/or walking for six hours during an eight-hour workday, and sitting for a total of six hours during an eight-hour workday. The claimant is capable of occasionally stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes and scaffolds.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8. The claimant was born on August 17, 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from August 17, 2015, through the date of this decision (20 CFR 404.1520(g)).

AR 18-30.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The widow of an individual who dies fully insured as defined by Title II may be entitled to disabled widow's insurance benefits. *See* 20 C.F.R. § 404.335. To receive benefits, the widow must demonstrate that: (1) she is the widow of a wage earner who died fully insured; (2) she is between the ages of fifty and sixty; (3) she is disabled; and (4) her disability is expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 402(e). She must also demonstrate that she became disabled within seven years of the date of her spouse's passing, *Carreon v. Massanari*, 51 F. App'x 571, 572 n.1 (6th Cir. 2002), which is September 27, 2014 in the current case.

A widow is not considered to be disabled unless "her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the [Commissioner] is deemed to be sufficient to preclude an individual from engaging in any gainful activity." *Dorton v. Heckler*, 789 F.2d 363, 365 (6th Cir. 1986). This determination of disability is an administrative decision and the only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). That is:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 404.1520(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. § 404.1520(a)(4).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id.* § 404.1520(a)(4)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id.* § 404.1520(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

**B. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in

20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform light work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 18-30.

### C. Plaintiff's Assertions of Error

Plaintiff alleges that the ALJ erred by: (1) concluding that her venous condition does not represent a severe impairment; (2) rejecting the opinion of Dr. Terrence Leveck; and (3) failing to properly evaluate Plaintiff's allegations of disabling pain. DE 12 at 12-15. Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 15.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertions of error below.

**1. The ALJ's evaluation of Plaintiff's venous condition.**

Plaintiff argues that the ALJ erred at step two of the five-step evaluation by failing to conclude that chronic venous insufficiency represents a severe impairment. DE 12 at 12-13. Plaintiff cites two office notes documenting her treatment with Dr. James Copeland, once on February 3, 2015 and once on February 7, 2017, which indicate diagnoses of venous insufficiency, varicose veins, and limb swelling in the lower extremities. AR 424-25, 597-98. Plaintiff notes that Dr. Copeland's instructions for care during the latter visit include the use of compression stockings and leg elevation. AR 601.

Plaintiff's argument is unpersuasive. The ALJ discussed the relatively mild nature of Plaintiff's lower extremity symptoms in detail in the administrative opinion. For example, the ALJ noted that in addition to showing no signs of deep vein thrombosis, Plaintiff demonstrated normal deep tendon reflexes, normal pulses, normal Doppler flow, and normal musculoskeletal functioning. AR 20-21. Plaintiff also exhibited a normal gait and station upon examination (AR 21), which further weighs against a finding that her venous condition constitutes a functionally restrictive impairment. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Indeed, Defendant's brief cites a host of documented examinations during which Plaintiff demonstrated a normal gait with extremity and musculoskeletal findings that were normal. *See* DE 16 at 5.

Even if the ALJ had failed to properly evaluate Plaintiff's venous insufficiency, the ALJ's determination that Plaintiff suffers from other impairments that are severe in nature (AR 19) renders Plaintiff's argument moot. It is well-established that once an ALJ determines that at least one of a claimant's alleged impairments is severe, the claim survives the step two

screening process, 20 C.F.R. § 404.1520(a)(4), and both severe and non-severe impairments are considered by the ALJ in the remaining steps of the disability evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2). An ALJ therefore does not commit reversible error when he fails to find that some impairments are not severe but determines that other impairments are severe and proceeds to the next step of the evaluation process. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Maziarz v. Sec'y Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987)). Therefore, the ALJ's finding that Plaintiff's venous condition does not represent a severe impairment at most represents harmless error, which does not necessitate reversal of the ultimate decision. *See Collette v. Astrue*, No. 2:08-cv-085, 2009 WL 32929, at *9 (E.D. Tenn. Jan. 6, 2009) ("[A]n administrative decision should not be reversed and remanded where doing so would be merely 'an idle and useless formality.'") (quoting *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004)). This assertion of error by Plaintiff is thus rejected.

**2. The opinion of Dr. Terrence Leveck.**

Plaintiff next argues that the ALJ improperly rejected the opinion provided by Dr. Terrence Leveck, who performed a consultative examination of Plaintiff on October 6, 2015. AR 471. Dr. Leveck identified only one definitive functional limitation allegedly caused by Plaintiff's condition, namely that Plaintiff would be able to sit for eight hours with frequent breaks during an eight-hour workday. AR 474. He also found that Plaintiff's fine motor functioning was intact but was unable to assess her ability to stand and walk because she was still recovering from left knee surgery performed just three weeks earlier. AR 471, 474. Notably, Dr. Leveck stated that "[a]t the present, it appears [Plaintiff] can lift and carry 10 [pounds] occasionally," but qualified this finding by suggesting that he could not provide an accurate

9

opinion without seeing the reports from a previous MRI of Plaintiff's lumbosacral spine. AR 474.[3]

The ALJ accorded "very limited weight" to this attenuated opinion in part because Dr. Leveck was unable to review the previous MRI. AR 28. Plaintiff argues, nonetheless, that the "occasional" 10-pound lifting/carrying restriction is consistent with the medical evidence of record by highlighting a single physical therapy session on April 25, 2017 during which Plaintiff demonstrated a limited cervical range of motion. AR 966-67. Plaintiff claims that this physical therapy notation, in conjunction with Dr. Leveck's opinion, proves that the "only two medical providers to measure range of motion show significant limitation." DE 12 at 14.

Plaintiff's argument is again unavailing. First, there are numerous records documenting visits with a treating physician, Dr. James Cates, which took place after Dr. Leveck's examination and yielded normal findings with respect to her cervical spine. Dr. Cates specifically noted throughout 2016 that physical examinations of Plaintiff's neck showed normal alignment and mobility while evaluations of her extremities similarly yielded normal findings. AR 907-09, 918-20, 922-27, 931-33. It was not unreasonable for the ALJ to conclude that such evidence outweighed the mildly abnormal cervical finding from a single physical therapy session. *Cf. Vaughn v. Astrue*, No. CIV.A 2009-192(WOB), 2010 WL 988986, at *3 (E.D. Ky. Mar. 15, 2010) (holding that objective medical evidence showing only mild impairment to the spine on numerous office visits was not consistent with the presence of a disabling condition).

---

[3] "Occasionally" is not defined in Dr. Leveck's report, although the usual definition of "occasionally" means the ability to perform a certain activity up to 1/3 of an eight-hour workday. *See, e.g., Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 787, n.5 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019); *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956, 970 (E.D. Mich. 2017).

Moreover, the note from the April 25, 2017 office visit indicates that Plaintiff's diminished range of cervical motion was the result of vertigo-related dizziness that was reportedly less severe the very next day. AR 966-68, 971. The physical therapist even deferred a "[f]ull assessment of [the] cervical spine" until such vertigo symptoms were completely resolved (AR 971, 973), and noted just a few days later that Plaintiff's lack of dizziness upon examination correlated with improvement in her cervical range of motion and upper cervical mobility. AR 973-974. Such progress was sufficiently advanced that Plaintiff opted to skip her next scheduled appointment without explanation on May 3, 2017 (AR 975), which undermines any allegation of continued problems with the cervical spine due to vertigo. *See Robertson v. Colvin*, 2015 WL 5022145, at *6 (E.D. Tenn. 2015) (noting that noncompliance with prescribed treatment is a legitimate factor for an ALJ to consider in assessing a claimant's allegations of disabling pain).

A claimant must do more than simply recite countervailing evidence in the record to overcome the ALJ's weight allocation; she must show that the ALJ's decision is not supported by substantial evidence. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014). Plaintiff's reliance on a single physical therapy note involving relatively minor symptoms that improved just days later falls woefully short of establishing that the ALJ's assessment of Dr. Leveck's opinion lacks the support of substantial evidence. This assertion of error is therefore rejected.

**3. The ALJ's evaluation of Plaintiff's subjective complaints of pain.**

Plaintiff finally asserts that the ALJ failed to properly evaluate her allegations of disabling pain. Plaintiff argues that the ALJ focused only on treatment occurring before 2012 while ignoring more recent treatment with various providers. Plaintiff suggests that such later

treatment is consistent with her testimony regarding neck pain and decreased functionality in her right arm. DE 12 at 14-15.

Plaintiff's argument requires evaluation under the standard set forth by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847 (6th Cir. 1986), which directs the ALJ to assess whether the claimant has satisfied two requirements: first, the claimant must produce objective evidence of an underlying condition; second, the claimant must either present (1) "objective medical evidence to confirm the severity of the alleged pain arising from that condition," or (2) "the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.* at 853. The *Duncan* test is a "more succinct form" of the requirements contained in 20 C.F.R. § 404.1529, which delineates the Commissioner's duties when evaluating whether a claimant suffers from disabling symptoms. *Felisky*, 35 F.3d at 1038.

Plaintiff's argument also implicates Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's statements regarding the "intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). This analysis previously required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of her alleged symptoms. *See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Because there is no indication that SSR 16-3p abrogated the extensive case law pertaining to credibility evaluations under SSR 96-7p, *see Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119, n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an

individual's character"), the Court will refer to the ALJ's evaluation of Plaintiff's allegations of disabling pain as the "credibility finding."

The ALJ in this case determined that Plaintiff's allegations of disabling pain were "not entirely credible." AR 26. The ALJ cited significant evidence in support of this assessment, including objective imaging studies, physical examination findings, and Plaintiff's own reports of her symptoms to providers. AR 26-27. The discussion focused largely on evidence from office visits and examinations that took place between 2015 and 2017. AR 26-27.

Despite this, Plaintiff alleges that the ALJ "totally failed" to discuss recent treatment by citing records documenting visits with Dr. Cates and nurse practitioner Jennifer Carter in 2016 and 2017. DE 12 at 15; AR 928, 933, 963-65. According to Plaintiff, the referenced records are noteworthy because they reveal prescriptions from Dr. Cates for Hydrocodone and Ibuprofen and show that Plaintiff reported pain in her neck and shoulders to Ms. Carter in April of 2017. *Id.*[4]

The Court first notes that an ALJ's failure to reference specific evidence in the record does not mean that such evidence was ignored. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005). Indeed, it is well settled that the ALJ "can consider every piece of evidence without addressing [all the evidence] in his opinion." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("[A]n ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion.") (internal citation omitted). Regardless, the

---

[4] One of the pages cited by Plaintiff actually shows prescriptions for Clonazepam and Citalopram Hydrobromide, which are used to treat mental symptoms. AR 928. A contextual reading suggests that Plaintiff was attempting to cite a different page showing prescriptions for Hydrocodone and Ibuprofen. AR 924.

Court need not speculate as to whether the ALJ considered the evidence cited by Plaintiff given that the ALJ *did* in fact reference that exact information in his opinion. AR 27.[5]

Additionally, and as discussed *supra*, the ALJ provided a detailed discussion of Plaintiff's progress that clearly covered her ongoing treatment through 2017. The ALJ highlighted visits on September 18 and October 27, 2015 during which Plaintiff denied any significant pain in her knee and stated that she was "very pleased" with her physical progress. AR 27. The ALJ described normal MRI findings and cited several normal examination findings from 2016, including normal ambulation, normal alignment and mobility in Plaintiff's neck, normal deep tendon reflexes, and normal manipulation functioning. AR 27. The ALJ also cited multiple records from Plaintiff's treatment with Ms. Carter in 2017, which contained similarly normal findings. AR 27. Contrary to Plaintiff's suggestion otherwise, it was not error for the ALJ to rely on his own assessment of these record findings over Plaintiff's personal testimony. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit has been unequivocal regarding the deference a reviewing court must give to an ALJ's credibility findings: "While in theory we will not disturb an ALJ's credibility determination without a compelling reason, ... in practice ALJ credibility findings have become essentially unchallengeable[.]" *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (internal citations and quotations omitted). Here, Plaintiff fails to provide any meaningful support for her contention that the ALJ's conclusions in this regard lack the support of substantial evidence. This assertion of error is thus rejected.

---

[5] The ALJ cites these pages (AR 924, 965) with the labels "B26F, page 18" and "Ex. B28F, page 12," respectively. AR 27.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully recommended that Plaintiff's motion for judgment on the administrative record (DE 11) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge